AO 106 (Rev. 04/10) Application for a Search Warrant

# UNITED STATES DISTRICT COURT
### for the
### Southern District of West Virginia

**FILED**
JAN 3 1 2014
TERESA L. DEPPNER, CLERK
U.S. District Court
Southern District of West Virginia

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )
)
1112 Madison Avenue, )
Huntington, West Virginia )
)

Case No. 3:14-mj-00014

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Southern_____ District of _____West Virginia_____, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☑ property designed for use, intended for use, or used in committing a crime;
- ☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC 846 | Possession with intent to distribute controlled substances |
| 21 USC 841(A)(1) | Conspiracy to Distribute controlled substances |
| 18 USC 1956(A)(1) | Laundering of monetary instruments |

The application is based on these facts:

See attached Affidavit.

- ☑ Continued on the attached sheet.
- ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Darren Cox, Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 01/22/2014

*Judge's signature*

City and state: Huntington, West Virginia

Cheryl A. Eifert, United States Magistrate Judge
*Printed name and title*

## ATTACHMENT A

### DESCRIPTION OF RESIDENCE

The residence known as 1112 Madison Avenue, Huntington, West Virginia, is described as a two-story white and green sided single family residential structure. The residence has a large picture window in the front of the residence and a grey asphalt shingle roof.



## Attachment B

### Items to Be Seized

Based on the facts detailed in this affidavit, there is probable cause to believe that located in the premises listed, there are fruits, evidence and instrumentalities, as listed below, of criminal offenses against the United States, that is 21 U.S.C. §841(a)(1), 18 U.S.C. §2; possession of controlled substances with intent to distribute, in violation of 21 U.S.C. §841(a)(1), use of a telephone to facilitate unlawful drug transactions, in violation of 21 U.S.C. §§843(b) and Title 18 USC 1956 (a)(1), Laundering of monetary instruments. Those items include:

(a) Log books, records, payment receipts, notes, and/or customer lists, ledgers, shipping labels and other papers relating to the transportation, ordering, purchasing, processing, storage and distribution of controlled substances, in particular heroin, cocaine, cocaine base and prescription pills including all records of income and expenses, for the years 2012 through present;

(b) Papers, tickets, notices, credit card receipts, travel schedules, travel receipts, passports, and other items relating to travel by Thomas to obtain and distribute narcotics and narcotics proceeds. Evidence of such travel is often times maintained by narcotics traffickers in the form of airline receipts, bus tickets, automobile rental receipts, credit card receipts, travel schedules, diaries, day planners, hotel receipts, logs, travel agency vouchers, notes, cellular telephone tolls and records of long distance telephone calls, for the years 2012 through the present;

(c) Books, records, invoices, receipts, records of real estate transactions, auto titles, financial statements, bank statements, cancelled checks, deposit tickets, passbooks, money drafts, withdrawal slips, certificates of deposit, letters of credit, loan and mortgage records, money orders, bank drafts, cashier's checks, bank checks, safe deposit box keys, money wrappers, wire transfer applications and/or receipts, fictitious identification, and other items

evidencing the obtaining, secreting, transfer, concealment, and/or expenditure of money by Thomas, for the years 2012 to present;

(d) Electronic equipment and their contents, utilized to contact co-conspirators and/or containing information related to the transportation, ordering, purchasing, processing, storage and distribution of controlled substances, and the proceeds there from for the years 2012 through present, including but not limited to pagers (digital display beepers), telephone answering machines, electronic data organizers, telephone caller identification boxes, video and audiocassette tapes, and any stored electronic communications contained therein;

(e) Cellular telephone(s) and/or portable cellular telephone(s) and any stored electronic communications contained therein possessed or used by Thomas;

(f) United States currency linked to drug trafficking offenses by Thomas;

(g) Photographs of co-conspirators, assets and/or narcotics, including still photos, negatives, videotapes, films, slides, undeveloped film and the contents therein;

(h) Address and/or telephone books, rolodex indices, and any papers reflecting names, addresses, telephone numbers, pager numbers, and fax numbers of co-conspirators, sources of supply, storage facilities, customers, financial institutions, and other individuals or businesses with whom a financial relationship exists which are possessed or used by Thomas;

(i) Indicia of occupancy, residency, rental and/or ownership of the premises described above or vehicles located thereon, including, but not limited to, utility and telephone bills, cancelled envelopes, keys, deeds, purchase lease agreements, land contracts, titles and vehicle registrations;

(j) The opening, search and removal, if necessary, of any safe or locked receptacle or compartment, as some or all of the property heretofore may be maintained;

3

(k)   Illegal controlled substances, in particular heroin, cocaine, cocaine base, prescription pills and marijuana, along with drug paraphernalia and equipment, related to the sale, manufacture, processing and storage of controlled substances, including but not limited to all cooking equipment, chemicals, packaging materials, scales, presses and cut;

(l)   All firearms and ammunition.

# A F F I D A V I T

STATE OF WEST VIRGINIA

COUNTY OF CABELL, to-wit:

I, Darren Cox, being first duly sworn, do hereby depose and state as follows:

### AGENT'S BACKGROUND AND EXPERTISE

1. I am Special Agent (SA) Darren Cox of the Federal Bureau of Investigation (FBI) and have been so employed for approximately twelve years. During this time, I have participated in many different types of criminal investigations, to include Financial Institution Fraud, Wire Fraud, Mail Fraud, as well as matters relating to violent street gangs and criminal drug enterprises. During my career with the FBI, I have led and participated in multiple Title III investigations involving the distribution of controlled substances. I have written and participated in numerous search warrants involving narcotic trafficking and am familiar with the means and methods utilized by individuals and enterprises to conceal their illegal activities.

2. I am currently assigned to the FBI Violent Crime Drug Task Force in Huntington, West Virginia, which is responsible for investigating crimes committed by violent individuals, gangs, and organizations which commit violent acts and/or

distribute controlled substances. The FBI Huntington Violent Crime Drug Task Force (VCDTF) is comprised of law enforcement officers from the FBI, Huntington Police Department, Barboursville Police Department, Cabell County Sheriff's Department, West Virginia National Guard counter-drug unit and the West Virginia State Police.

3. I am familiar with the facts surrounding this investigation involving the distribution of narcotics by Demetrius Thomas, Date of Birth August 28, 1980, based on personal observations and information provided to me by members of the VCDTF and other law enforcement officers. This affidavit contains facts necessary to establish probable cause in order to obtain a search warrant on Thomas's residence, 1112 Madison Avenue, Huntington, WV, but does not include every detail and fact known to your affiant regarding this investigation.

4. We are investigative or law enforcement officers authorized by Rule 41(a) of the Federal Rules of Criminal Procedure to make applications for search warrants and seizure warrants.

## SUMMARY OF THE CASE

5. The FBI VCDTF has been aware of Demetrius D. Thomas, aka Demetrius Epps, and his criminal involvement with illegal drug trafficking since 2007.

6. In the course of this investigation, I have reviewed

and analyzed police records, financial records, photographs, and conducted personal interviews with cooperating witnesses and other law enforcement personnel. I have conducted surveillance and believe probable cause exists that Thomas is currently residing at and occupying the residence located at 1112 Madison Avenue, Huntington, WV. I also believe evidence from illegal drug trafficking activities are present at the residence.

7. Your affiant submits that the facts contained in the paragraphs below demonstrate that there is probable cause to believe that the fruits, instruments, and evidence of violations of Title 21, United States Code, Sections 846 and 841(A)(1) possession with intent to distribute controlled substances and conspiracy to distribute controlled substances) along with Title 18 USC 1956 section (A)(1) laundering of monetary instruments, will be found at 1112 Madison Avenue, Huntington, West Virginia.

8. Set forth in the paragraphs below are facts and circumstance learned during the course of this investigation which demonstrate probable cause to search the locations specified above.

9. Thomas is a convicted felon, who has a criminal history dating from October 2003 when he was arrested by Huntington Police Department for possession with intent to deliver a controlled substance. In June 2006, Thomas was convicted of a state felony and served one year in prison. In

3

December 2007, Thomas was federally charged with distribution of cocaine and received 70 months of federal prison and three years of supervised release. Thomas was released from the Bureau of Prisons in November 2011 and is under federal supervision until November 2014.

10. During February 2013, members of the VCDTF received information from a Confidential Human Source (CHS), who advised Thomas was selling controlled substances, primarily heroin, from his residence at 417 Avondale Road, Huntington, West Virginia. The CHS advised Thomas was working with several individuals residing at 417 Avondale Road to sell controlled substances.

11. In August 2013, members of the VCDTF began receiving telephonic drug complaint calls regarding Thomas's residence, 417 Avondale Road. From August 12, 2013 through October 7, 2013, the VCDTF received numerous complaints indicating 417 Avondale Road had a high volume of human traffic to/from the residence. The callers believed the traffic to/from the residence was drug related based on the high volume of visitors and short duration of the visits.

12. In October 2013, your affiant received information from a CHS indicating Thomas was in fact selling narcotics from 417 Avondale Road.

13. During the week of October 23, 2013, your affiant utilized the CHS to conduct a controlled purchase of heroin from

4

Thomas. At the direction of VCDTF, the CHS telephonically contacted Thomas and arranged to purchase more than 1/2 gram of heroin. Under the observation of the VCDTF, the CHS entered Thomas's residence at 417 Avondale Road. The CHS met with Thomas and purchased a substance which later field test positive as heroin.

14. During the week of November 12, 2013, members of the VCDTF conducted surveillance on Thomas's residence, 417 Avondale Road. During the surveillance, the VCDTF observed a subject driving a vehicle leaving the residence, after a visit of short duration. The subject's behavior was consistent with drug trafficking activities which led the VCDTF to conduct a traffic stop of the vehicle. During the stop, two subjects in the vehicle were found to be in possession of heroin. During an interview of one of the subjects, he/she stated they had been to 416 Avondale Road and purchased heroin from Thomas. The subject stated he/she had purchased heroin from Thomas on several occasions.

15. On November 12, 2013, members of the VCDTF executed a WV state search warrant on Thomas's residence, 417 Avondale Road. During the search, the VCDTF found approximately nine ounces of marijuana, ½ gram of heroin, over $900 in cash and three handguns. Thomas was arrested on WV State criminal charges of possession of controlled substance and possession of

5

a firearm by a felon. Shortly after his arrest, Thomas posted bond and was released from the Western Regional Jail.

16. After his release from the Western Regional Jail, Thomas began residing with Amanda Chapman at 1112 Madison Avenue, Huntington, WV. Chapman is believed to be a long-time girlfriend of Thomas with whom he had previously resided. Thomas provided 1112 Madison Avenue as his residence of record with the United States Probation office.

17. In January 2014, the VCDTF learned Thomas had returned to selling controlled substances. On January 15, 2014, the VCDTF utilized a CHS to conduct a controlled purchase of heroin from Thomas. Under the direction of the VCDTF, the CHS telephonically contacted Thomas and arranged to purchase approximately one gram of heroin. Thomas agreed to meet the CHS and traveled to the meeting in an automobile. After the controlled drug purchase, members of the VCDTF followed Thomas to 1112 Madison Avenue. The substance sold to the CHS by Thomas field tested positive as heroin.

18. A vehicle identified as belonging to Thomas during the search at 417 Avondale Road has been observed parked in front of 1112 Madison Avenue. On January 22, 2014, the vehicle was observed parked in front of the residence and appeared to have been there for at least 24 hours.

19. Based on the above facts, your affiant believes

6

probable cause exists to believe Demetrius Thomas is operating a drug enterprise from his residence. Your affiant believes financial records reflecting ownership, additional assets and information on co-conspirators will be maintained at Thomas's residences. Based on the historical and continuance nature of Thomas's drug trafficking activities, your affiant believes Thomas maintains critical evidence to include illegal substances at the residences.

## BASIS FOR EVIDENCE SOUGHT IN SEARCH WARRANT

20. Based upon my training and experience, consultation with other law enforcement officers experienced in drug and money laundering investigations, and all the facts and opinions set forth in this affidavit, your Affiant knows that:

21. Individuals involved in drug trafficking often maintain at their residence, records and ledgers evidencing their trafficking activities in order to keep track of the ordering, purchasing, storage, distribution and transportation of drugs. Even after a drug transaction is completed, documentary records and ledgers often remain for long periods of time to memorialize past transactions, the status of accounts receivable and accounts payable, and the names and telephone numbers of suppliers, customers and co-conspirators. These records are often maintained not only on paper, but also as electronic data found on computers, electronic address books and

7

other electronic storage devices.

22. Individuals involved in drug trafficking must often rely on others to obtain the drugs and to help them market the drugs. It is common for drug traffickers to possess address and telephone numbers in electronic format, books, or paper which reflect names, addresses, and/or telephone numbers of their associates involved in manufacturing or trafficking. These books or papers include such items as address books, slips of paper, telephone messages, and correspondence. It is known that code names are often used for weights, amounts, buyers, and the name of suppliers, transporters and customers of the drug dealers. The evidence of the identities of these criminal associates is often maintained at the individual's residence. These records are often maintained not on paper but also electronic data found on computers, electronic address books and other electronic data found on computers.

23. Individuals involved in drug trafficking utilize mobile telephones to maintain contact with co-conspirators and conduct their criminal activity. These mobile telephones contain data concerning telephonic contacts with co-conspirators as well as phone books containing telephone numbers for co-conspirators. Therefore, your affiant requests authorization to seize all mobile telephones found at the locations to be searched and the search the telephones' electronic phone books

and records of telephonic contacts, to include all mobile telephone accessories, including but not limited to, batteries and phone chargers, SIM cards, and pre-paid phone cards.

24. Individuals involved in drug trafficking amass proceeds from sales of drugs, and the drug traffickers attempt to legitimize these profits. To accomplish these goals, they utilize foreign and domestic banks and their attendant services, cashier checks, money drafts, letters of credit, brokerage house, real estate, and business fronts. They also use electronic equipment for counting currency generated from the sale of drugs. These documents and items are often maintained for long periods of time, even months and years after the conclusion of drug transactions themselves. These records are often maintained not only on paper, but also electronic data found on computers, electronic address books and other electronic storage devices.

25. Drug traffickers often use fictitious names on documents pertaining to residency, but they receive mail and other items of documentation which indicate occupancy or standing. This is done to avoid leaving evidence to law enforcement regarding control of dominion. Individuals criminal or otherwise frequently have in their homes, on their persons, or in their vehicles canceled letters, envelopes, water bills, utility bills, and other records or items that tend to show

9

ownership or control of their residences.

26. Drug traffickers use storage sheds, safety deposit boxes, safes and other clandestine locations to conceal evidence of their crimes and proceeds from their crimes from law enforcement. Documents identifying rented storage locations, including safe deposit boxes, are often kept in residence.

27. Drug traffickers often maintain photographs of illegal drugs, persons using illegal drugs, assets derived from the sale of illegal drugs and co-conspirators in their residence. The photographs are often maintained for long periods of time, even months and years, aft the conclusion of the drug sales themselves.

28. Individuals involved in drug trafficking will often maintain weapons, firearms, and ammunition on their person or at their residence in order to protect themselves and guard their drugs and drug profits, and for enforcement purposes during their drug dealings. These weapons and firearms are used and can be used as an instrumentality of the crimes of possession and distribution of drugs and money laundering.

29. It is also your affiant's opinion and belief that the above-described documents and items are possessed and retained by drug traffickers for extended periods of time, months and years, in the same way a legitimate business will maintain records and tools of its trade whether or not the business has a

10

particular item in inventory on a given date. These documents are kept by drug traffickers whether or not the trafficker is in possession of any drugs at any given moment. Your affiant believes that the seizure of such documents will provide evidence of the events set forth in the is affidavit and that such documents can be found in the search locations to be searched despite any lapse of the time between the events described and the anticipated search pursuant to this warrant.

30. Based on my training and experience, consultation with other law enforcement officers experienced in drug investigations, and all the facts and opinions set forth in this affidavit, your affiant believes that the items set forth in Attachment C which evidence violates Title 21, United States Code, Sections 846, 841(A)(1) possession with intent to distribute controlled substances and conspiracy to distribute controlled substances) along with Title 18 USC Section 1956(a)(1) laundering of monetary instruments, including dominion and control evidence, will be found at 1112 Madison Avenue, Huntington, West Virginia.

### CONTINUED CONFIDENTIALITY OF IDENTITY OF THE CW

31. Your Affiant wishes to keep secret and confidential the identity of the CHS to preserve the CHS future usefulness and effectiveness to law enforcement officers as disclosure of the CHS identity would tend to endanger the CHS safety and well-

being. It has been your Affiant's experience that once the identity of a Cooperating Human Source is known, they are no longer of use as such. Persons arrested on information provided by a CHS may have friends and relatives who have the desire and capability to cause great bodily harm, or even death to said CHS. It is the opinion of your Affiant that the identity of this CHS should not be revealed at this time due to the above stated facts.

## CONCLUSION

32. Wherefore, I respectfully request that a search warrant be issued for the entire premise located at 1112 Madison Avenue, Huntington, West Virginia as further described by Attachment A.

Further your affiant sayeth naught.

_____
DARREN COX
Special Agent
Federal Bureau of Investigation

Sworn to before me, and subscribed in my presence, this 22nd day of January 2014.

_____
Cheryl A. Eifert
United States Magistrate Judge